Abraham WEISS et al., Plaintiffs,

v.

Thomas F. CHALKER et al., Defendants.

Rose LERMAN et al., Plaintiffs,

v.

Harry G. BURKS et al., Defendants.

Nos. 68 Civ. 1044, 67 Civ. 95.

United States District Court,
S. D. New York.

April 27, 1973.

As Amended May 4, 1973.

Leonard I. Schreiber, New York City, Gen. Counsel, Ira Jay Sands, New York City, for plaintiffs.

Pollack & Singer, New York City, for defendants Anchor Corp., and others.

Seward & Kissel, New York City, for defendants Fundamental Investors, Inc. and Anchor Growth Funds, Inc.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant, Zuckerman, Smith & Co.

Carro, Spanbock & Londin, New York City, for defendant Jessup & Lamont.

Valicenti, Leighton, Reid & Pine, New York City, for defendants Burks, Hopkins and Memmerer.

Miller, Montgomery, Spalding & Sogi, New York City, for defendant First Investors Corp.

Gifford, Woody, Carter & Hays, New York City, for defendant Emanuel Deetjan & Co.

Laventhall & Zicklin, New York City, for objectors Rittenberg and Ettinger.

Kreindler & Kreindler, New York City, for objectors Fiestal, Goldberg and Lasker.

Kass, Goodkind, Wechsler & Gerstein, New York City, for objector Weber.

Pomerantz, Levy, Haudek & Block, New York City, for objectors Rittenberg,

Ettinger and Weber and objectors Fiestal, Goldberg and Lasker.

Weinstein & Levinson, New York City, for objector Band.

Charles Trynin, New York City, for objector Margot Aronsohn.

GURFEIN, District Judge.

On May 25, 1972 I refused to approve a settlement in this case because of the inadequacy of the discovery. I appointed the nominee of six objectors as co-general counsel for the purpose of conducting discovery on behalf of the plaintiffs. Weiss v. Chalker, 55 F.R.D. 168 (S.D.N.Y. 1972).

Since then, it is now reported, extensive interrogatories have been served and answered. Documents were examined and the depositions of five of the defendants were taken. Three were unaffiliated directors and two were affiliated directors.

There are three main claims in this derivative action: (1) that defendants failed to recapture "give-ups" of brokerage commissions and obtain reciprocals for the benefit of the funds. See Moses v. Burgin, 1 Cir., 445 F.2d 369, cert. denied, 404 U.S. 994, 92 S.Ct. 532, 30 L.Ed. 2d 547 (1971); (2) that the defendants breached their fiduciary duty in arranging the merger of the funds investment adviser and underwriter, Anchor Corporation with Washington National Corporation, and are thus liable to the funds for the profits made on the "sale" of the advisory office. See Rosenfeld v. Black, 445 F.2d 1337 (2 Cir. 1971); see 336 F.Supp. 84 (S.D.N.Y.1972) (on settlement); (3) that the defendants permitted excessive fees to be charged by the investment adviser which should be recouped by the funds. See 55 F.R.D. at 169.

Relevant facts concerning each of these issues have now been elicited so that an intelligent evaluation can be made of the issues themselves.

On the question of give-ups, Mr. Burr, one of the principals of the adviser, conceded that he had known that a mutual fund organization had become a member of the Pacific Coast Exchange as early as 1963; that the practice was frowned on by the members of the NASD and by the SEC itself, and that he had not thought of the possibility that the recaptured commissions could be "returned" to the mutual fund. He testified that he first learned of the possibility of NASD recapture for the benefit of the funds in September 1966 in a hearing at the SEC. Mr. Haire, another principal, testified that he, too, first heard of the possibility of recapture for the funds at the same SEC hearing.

Unaffiliated directors confirmed that this possibility of recapture for the funds was reported to them at a meeting of the board of directors of the funds shortly after September 1966. The feeling was that in view of the imminence of the elimination of give-ups by a prospective order of the SEC there was nothing to do at the time but to wait and see whether volume discounts rather than give-ups would be permitted. There were similar discussions in the board in 1968.

To be sure these statements, accepted at face value, do not destroy the plaintiff's case, but they do make the burden heavier. For example, the plaintiffs might have to prove a lack of independence on the part of the unaffiliated directors.

On the question of the "sale" of advisory office, it appears that management directors did abstain from voting at the directors meeting approving the merger. But there is a lingering doubt whether the unaffiliated directors had anything to do with, or even foreknowledge of, the selection of the merger partner. And the plaintiffs would contend that the unaffiliated directors merely put their stamp of approval on an agreement already done.

The claim that the advisory fees were excessive was not developed by proof. On the contrary, the unaffiliated directors scrutinized and approved the fee system.

Any of these issues could, upon a trial, go the other way but I am satisfied that the plaintiffs' case is not so strong as to make a trial more advantageous than a fair settlement. It is, therefore, unnecessary to go into detailed appraisals of the going concern value of the investment advisory company, if that should be the ultimate test. For, in my judgment, the plaintiffs are getting a good settlement. It is fair, reasonable and adequate.

The settlement proposed has now been amended. The amended settlement provides substantially as follows:

"(1) Anchor will reduce the fee schedules of Fundamental and Growth Fund and will guarantee a dollar reduction in fees of at least $3,300,000 over the next ten years;

(2) Anchor will pay a cash sum of $500,000 at the rate of $100,000 per year over the next five years, to Fundamental and Growth Fund;

(3) Anchor has formed a subsidiary which has become a member of the PBW Stock Exchange, and Anchor will further reduce the management fees of Fundamental and Growth Fund by 75% of the net profits derived by the subsidiary from execution of portfolio brokerage transactions for Fundamental and Growth Fund.

(4) Messrs. Haire and Burr will each contribute 2500 shares of WNC stock, or its cash equivalent, to Fundamental and Growth Fund."

The foregoing is a settlement which the Court approves.

The parties will submit an order on five days' notice.